# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **LIBERTY INSURANCE CORP.,** | ) | **CASE NO. 1:16CV2249** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **JAMES R. ANDERSON, ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion for Judgment on the Pleadings (ECF DKT #12) pursuant to Federal Rules of Civil Procedure 12(c) by Plaintiff Liberty Insurance Corp., to dismiss Defendant's claim for Indemnification and Assumption of Liability against the Plaintiff. For the following reasons the Motion for Judgment on the Pleadings is be GRANTED

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Liberty Insurance Corporation ("Plaintiff") brings this suit against Defendants James Anderson ("Defendant") and Mary Stief ("Stief"). Stief is named as a defendant in this case solely because she is asserting claims against Defendant in the underlying case pending in the Lake County Court of Common Pleas, *Stief v. Anderson*, Case Number 16CV000635. In *Stief*, Plaintiff Stief is bringing a suit against Defendant, her former husband. Stief and

Defendant were married for approximately one year, from August 2014 until September 2015. For some time before Defendant and Stief were married and while they were dating, Stief worked as a long-term substitute teacher. Shortly after Defendant and Stief's divorce in September 2015, Stief alleges that she began to receive disturbing and harassing emails from a sender under the name 'Mike L,' who identified himself as one of her students. Those emails included attachments with obscene sexual photographs of Stief. Stief alleges that she was not aware of and did not consent to those photographs. Stief further alleges that a short time later, 'Mike L' sent a message stating that he had uploaded videos to YouTube of Stief engaging in sexual acts. Stief alleges that in subsequent emails 'Mike L' accused her of having sex with a student. Another email under the name 'JK' threatened Stief with a sex video with one of the students unless she sent photographs of herself. Stief reported these incidents to law enforcement and as a result of the investigation, a warrant was issued for Defendant. Stief alleges that Defendant admitted to being responsible for the emails and posting the videos online. Stief also alleges that Defendant admitted to doing so with the purpose of harassing, humiliating, scaring and threatening her. Stief has claimed Invasion of Privacy, False Light, Public Disclosure of Private Acts, Intentional Infliction of Emotional Distress, Defamation Per Se and Punitive Damages.

Plaintiff is an insurer that issued a Homeowner's Policy of Insurance ("Insurance Contract") to Defendants Stief and Anderson for the period June 11, 2015 to June 11, 2016. As part of the action in the underlying suit, Defendant Anderson tendered the state Complaint to Liberty so that Liberty would defend him and, if necessary, indemnify him in connection with the action filed by Stief. Plaintiff retained counsel for Defendant and issued a reservation of

2

rights letter dated May 13, 2016. On July 12, 2016, Plaintiff issued a revised reservation of rights letter. Plaintiff alleges that Defendant's conduct is outside the scope of the Insurance Contract, that Plaintiff has no duty to defend or indemnify Defendant and that Plaintiff is entitled declaratory relief as a result.

## II. LAW AND ANALYSIS

### A. Standard of Review

After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). In this jurisdiction, "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) . . . We 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir.2007) (citations omitted). The court's decision "rests primarily upon the allegations of the complaint;" however, "exhibits attached to the complaint[] also may be taken into account." *Barany-Snyder v Weiner,* 539 F.3d 327, 332 (6th Cir.2008) (citation omitted) (brackets in the original). Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542. A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**B. Standard for Declaratory Judgment**

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal

4

relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act. In *Public Affairs Press v. Rickover*, 369 U.S. 111, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962), the highest court opined: "'The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 499 [62 S.Ct. 1173, 1177-78, 86 L.Ed. 1620 (1942)]." Put another way, the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985).

The parties do not dispute that Ohio law governs the interpretation of the relevant insurance policy. The policy was written for Defendant Anderson, a citizen of Ohio, and insured a property located in Ohio. Therefore, the Court will apply Ohio law.

**C. Contract**

In Ohio, insurance contracts are analyzed like any other contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006). When interpreting the terms of a contract the Court's the primary purpose is to give effect to the intent of the parties, which may be presumed to lie in the language that the parties used. *Swain v. Wells Fargo Bank, N.A.*, 54 F. Supp. 3d 850, 856 (N.D. Ohio 2014). Under Ohio law the elements required for a breach of contract claim are 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff. *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F.Supp.2d 763, 769 (N.D. Ohio 2004).

Because it is inevitably the insurer that drafts the contract, such a contract of adhesion

5

should be construed liberally in favor of the insured. *Id*. Furthermore, where there are ambiguities in the language of the contract, a court should interpret the terms liberally in favor of the insured. *Scott,* 417 F. Supp. 2d at 932. However, "the general rule of liberal construction cannot be used to create an ambiguity where one does not exist." *Id*. Under Ohio law, language is considered ambigious "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *U.S. Fid. & Guard Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201 (Ohio Ct. App. 1998). A party is bound to the terms of a contract absent the presence of fraud or deceit. *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

Ohio law clearly holds that the allegations as set forth in the complaint against the insured determine the scope of the insurer's duties. *Ohio Gov't. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 246 (2007). "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." *Id.*

A court should construe the language of an insurance policy to be its "ordinary, usual or popular sense and the word accident, in its simplest and most popular sense, means an unexpected event." *Scott,* 417 F. Supp. 2d at 933. The Sixth Circuit has established that an analysis of "accident" or "unexpected event" involves determining whether the plaintiff "caused and intended the consequences that resulted in its claim for damages." *Univ. of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1282 (6th Cir. 1995). Ultimately, a court should discern whether a plaintiff was in "total control" of the circumstances which caused the damages. *Id*.

6

Accordingly, this Circuit has ruled that under Ohio law, a plaintiff "who undertakes deliberate damage-inducing actions with known consequences, would undermine the function of insurance as the sharing of unpredictable risks of damage." *Arkwright*, 51 F.3d at 1282. Thus, even where a plaintiff does not necessarily desire to cause a specific type of injury, insurance contracts do not cover foreseeable, related injuries. *See Scott,* 417 F. Supp. 2d at 935 (Insurance contract did not cover damages from a purposely set fire, despite plaintiff lacking subjective intent to cause fire damage to his property). *See also Arkwright*, 51 F.3d at 1282 (Damage related to plaintiff's removal of asbestos from a building was purposeful and reasonably foreseeable and thus was not covered by his insurance contract).

The Court finds the plain language of the contract clear and unambiguous. The Insurance Contract states under Section Coverage E - Personal Liability: "If a claim is made or a suit is brought against an"insured" for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies," the insurer will provide legal defense and assume limited liability. Ex. B, Certified Copy of Policy at 18. The Insurance Contract states that 'occurrence' "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period." *Id* at 8. It also states that "Coverage E - Personal Liability and Coverage F- Medical Payments to Others do not apply to 'bodily injury' or 'property damage': (a) Which is expected or intended by the 'insured'..." *Id* at 18.

Defendant suggests that Plaintiff should continue to defend Defendant as though he somehow unintentionally posed as a high school student and sent multiple emails containing

salacious images of Stief and falsely accused Stief of sexual activity.[1] The Court finds the litany of Defendant's actions had a clear purpose: to harass, embarrass and otherwise cause significant harm to Stief. Stief has claimed Invasion of Privacy, False Light, Public Disclosure of Private Acts, Intentional Infliction of Emotional Distress, Defamation Per Se and Punitive Damages. Ex. Complaint, *Stief v. Anderson*, Lake County Court of Common Pleas, Case No. 15CV635, 4-6. Defendant argues that while he did intend or expect some sort of harm, it was not his intent to injure Stief in the exact way that she claims or, alternatively, he contends that Stief's injuries were not foreseeable.

However, in this case, the Court need only look at whether Defendant's actions were purposeful and if Stief's injury was a foreseeable result of those actions. Defendant's argument that he did not subjectively intend to cause the type of harm that would result in a lawsuit does not alter the fact that he intentionally sent those emails designed to injure or with the knowledge that injury would be the necessary result. Even assuming that Defendant struggles with causation, he should have reasonably foreseen that his actions would result in injury. Defendant cannot reasonably make the argument that Stief's injuries were neither expected nor intended.

The Court does not need to address Plaintiff's argument that mental damages do not fall under the scope of 'bodily injury' as defined in the Insurance Contract. The Court finds it sufficient that because Defendant's conduct falls outside the scope of the Insurance Contract, Plaintiff does not have a duty to defend or indemnify Defendant.

### III. CONCLUSION

Since Stief's claims against Anderson are not covered "occurrences" and are also

---

[1] Defendant does so immediately after citing "Ohio Jury Instruction - CV 429.05...intentional infliction of serious emotional distress..."

excluded from coverage as injuries which were "expected or "intended," the Court finds that Plaintiff Liberty Insurance is not required to indemnify nor defend Defendant Anderson against Defendant Stief's lawsuit.  Plaintiff's Motion for Judgment on the Pleadings (ECF DKT #12) is GRANTED.

**IT IS SO ORDERED.**


s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

Dated:  July 12, 2017